IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ALFORD LEE CURRY,** | ) |
| | ) |
| Claimant | ) |
| | ) |
| v. | ) Civil Action No.: 2:12-CV-00540-KOB |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of** | ) |
| **Social Security,** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On December 17, 2009, the claimant, Alford Lee Curry, applied for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. The claimant alleges disability commencing on November 16, 2006 because of depression and crack-cocaine and ethanol abuse. (R. 24, 78). At the administrative hearing on June 3, 2011, the claimant amended his alleged onset date to June 18, 2007. (R. 144). The Commissioner denied the claims both initially and on reconsideration. The claimant filed a timely request for a hearing before an Administrative Law Judge, and an ALJ, Windell R. Owens, held a hearing on June 3, 2011. (R. 24, 74). In a decision dated June 23, 2011, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for disability insurance benefits or supplemental security income. (R. 34-35). On December 14, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1-3). The claimant has exhausted his administrative remedies, and this

1

court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court AFFIRMS the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review: (1) whether the ALJ properly considered all of the claimant's impairments and their limitations in his Residual Functional Capacity ("RFC") assessment; (2) whether the ALJ correctly weighed the opinions of Drs. Hain and Blotcky; (3) whether the ALJ properly developed the record; and (4) whether substantial evidence supports the ALJ's determination that the claimant can perform other work.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo.* The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court may not

look only to those parts of the record that support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

In determining the claimant's RFC, the ALJ should "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Social Security Ruling 96-8p, 61 Fed. Reg. 34474-01 (July 2, 1996). In identifying functional limitations or restrictions, the ALJ should "consider the combined effects of a claimant's impairments." *Walker,* 826 F.2d at 1001 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986)).

Generally, the opinions of an examining physician are entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir.1985). However, "the [ALJ] may reject any medical opinion," including that of a treating or consulting physician, "if the evidence supports a contrary finding." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985). In rejecting an examining physician's opinion, the ALJ must articulate specific reasons for rejecting the opinion. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir.2005). A non-examining physician's opinion, standing alone, "cannot constitute substantial evidence" to discredit an examining physician's opinion. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citing *Spencer on behalf of Spencer v. Heckler*, 765 F.2d 1090, 1093–94 (11th Cir.1985)).

While the burden rests with the claimant to prove a disability, the ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912(c). This duty may include ordering a consultative evaluation. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (internal citations omitted). However, the duty does not include "order[ing] a consultative examination [when] the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

## V. FACTS

The claimant has a high school education with two years of college. At the time of the administrative hearing, the claimant was fifty-one years old. His past work experience includes employment as a machine operator, a sign installer, and an electrician. The claimant alleges disability because of depression and ethanol and crack-cocaine abuse. (R. 78-80).

*Physical Limitations*

The claimant was admitted to the UAB Health System on November, 17, 2005 with suicidal ideations. Reports indicate the claimant suffered from hypertension, migraine headaches and a seizure disorder. The reports also indicate alcohol and cocaine abuse. He was released on November 29, 2005 with samples of Seroquel and Lexapro. He was also prescribed Neurontin for his headaches. (R 266-68).

The claimant was again admitted to the UAB Health System on July 2, 2007 with suicidal ideation and homicidal ideation towards his second wife. The Reports indicate that the claimant suffers from major depressive disorder with psychosis, hypertension, migraines, and substance abuse. The report states the claimant had been off his medication for approximately six months and had used cocaine four days earlier. The claimant was then discharged on July 23, 2007. At discharge, he denied any psychotic symptoms and any suicidal or homicidal ideation. His sister agreed to take him in after discharge and get him into a drug rehabilitation program. (R. 239-241).

On November 22, 2009, the claimant returned to the UAB Health System with suicidal ideation. Specifically, the claimant now planned "to drink himself to death." The report states that claimant drank "one gallon of alcohol and two cases of beer." After admittance, the claimant began showing an improved mood. He reported to the psychiatric staff that he drank a case of beer a day – but he was trying to cut it down to half a case – and smoked crack-cocaine monthly. The claimant was discharged on December 4, 2009 and prescribed Prozac and hydrochlorothiazide. (R. 246-49).

On February 12, 2010, Dr. Romaine Hain treated the claimant for his depression. The claimant reported that his condition was better after he restarted his medications. He, however,

noted "intrusive memories and hyper vigilance" because he was living with his sister who had sexually abused him as a child. (R. 279).

On April 6, 2010, reviewing physician Dr. Robert Estock performed a Psychiatric Review and a Mental Residual Functional Capacity Examination. (R. 280, 294). In the Psychiatric Review, Dr. Estock stated the claimant suffered major depressive disorder. (R. 283). He further indicated that the claimant's functional limitations were only moderate. (R. 290). In conclusion, Dr. Estock concluded that the claimant's condition appeared to be treatable with medication and exacerbated with substance abuse. (R. 282). In the Mental Residual Functional Capacity Examination, Dr. Estock opined that the claimant could perform simple, repetitive tasks; would only miss one day of work a month; should work separated from the public and co-workers and with minimal interaction with supervisors; and should be allowed gradual acclimation to any work duty changes. (R. 296).

On June 8, 2010, the claimant returned to the UAB Health System with suicidal ideations. The reports indicate the claimant tested positive for both alcohol and cocaine. (R. 331-33). On July 2, 2010, the claimant told Dr. Hain that "he was much better with his meds – not 100% but much better." Describing his June visit to the hospital, the claimant reported he ran out of medication and had relapsed onto alcohol and cocaine. Dr. Hain refilled his medications and also prescribed Geodon and Citalopram. (R. 311-12). On August, 26, 2010, Dr. Hain reported that the claimant stated that the medications were controlling his symptoms "well." (R. 395). On February 11, 2011, the claimant again reported to Dr. Hain that the medications were "doing a good job for him." Dr. Hain stated that the claimant denied any side effects from the medication. (R. 392).

On January 24, 2011 Dr. Alvin J. Schonfeld diagnosed the claimant with bilateral asbestosis. He opined that the claimant was at increased risk for mesothelioma and other non-pulmonary illnesses. (R. 386).

On May 17, 2011, the claimant's attorney referred him to Dr. Alan D. Blotcky for a Psychological Evaluation Report. Dr. Blotcky reported that the claimant stated he did not have a legal arrest record and had not used alcohol or cocaine in eighteen months, despite testing positive in June 2010. Dr. Blotcky determined that the claimant had borderline intellectual abilities, major depressive disorder, and hypertension. He stated that the claimant must be involved in psychiatric treatment in a regular and uninterrupted basis. He also opined that the claimant had "extreme" limitations in his ability to respond to customary work pressures or to complete tasks in a timely manner. (R. 404-09).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits and supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 109-10). At the hearing, the claimant amended his alleged onset day to June 18, 2007 because of income earned after the original alleged onset date November 16, 2006. (R. 79).

The claimant testified that he had not used alcohol or cocaine in "a little over a year-and-a-half or pretty close to a year." He testified that he quit cold turkey, because the alcohol and the cocaine did not mix well with his medication. (R. 86). Later, the ALJ clarified that it had, in fact, only been a year since the claimant drank alcohol or smoked crack-cocaine. (R. 96).

The claimant testified that he tired easily and could only walk about thirty minutes or three blocks before his legs would give out on him. He further stated that even with the medication he still suffered anxiety and depression. He testified that sitting with his back to the

7

door made him uncomfortable. Although he stated he was no longer hearing or seeing things, he could not be in a "whole crowd of folks." He further testified that he could not concentrate like he used to. He stated he had trouble focusing on one particular thing. (R. 86-89). The claimant testified that part of these symptoms stemmed from his medications, which made him "groggy." (R. 96). Upon further questioning from the ALJ about his abilities and impairments, the claimant testified that he had no musculoskeletal injury or impairments in his legs. He estimated that he could stand at military attention for about thirty minutes and could lift approximately thirty pounds. (R. 94).

He also testified that he suffered headaches "all the time." He stated that the headaches had been persistent for the past fifteen to twenty years, ever since a tire blow-out while he was working as a mechanic. While he testified these headaches were normally a five-out-of-ten, he stated that sometimes, they went "off the scale." He stated that these headaches would not allow him to stand up and he had to crawl to the bathroom. He testified that the headaches occurred two-to-three times a month and could last for a couple of days. (R. 90-91). The claimant also stated that he would have to lie down for an hour every day. He testified that he would try to leave the house daily because staying home would depress him. However, he stated that he no longer drove or had a driver's license. (R. 92-93).

A vocational expert, Claude F. Peacock, then testified as to the type and availability of jobs that the claimant was able to perform. The ALJ asked her to hypothesize about an individual who was forty-eight years old at the amended onset date, with a high school education, and two years of college. The ALJ further characterized this hypothetical individual as limited to light level work with no hazardous machinery, unprotected heights or exposure to pulmonary irritants. Mentally, the ALJ stated that the hypothetical individual could perform

simple routines tasks, could maintain concentration for two hours, could complete an eight-hour workday with regular breaks and would need gradual and infrequent changes in the work environment. The ALJ further limited the individual to infrequent contact with the public, occasional supervision and only casual interaction with co-workers. (R. 100).

Ms. Peacock testified that such an individual would not be able to return to the claimant's past work. However, she testified that such an individual would be able to work as an integrated circuit assembler, die machine tender and electrical pre-assembler. She further testified that if the hypothetical individual had extreme limitations in the ability to perform limited tasks, to respond to supervision or to maintain concentration for two hours, then he would be unable to find gainful employment. (R. 101-03).

*The ALJ's Decision*

On June 23, 2011, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 24). First, the ALJ found that the claimant met the insured status requirements of the Act and had not engaged in substantial gainful activity since the amended alleged onset date. Next, the ALJ found that the claimant suffered from the following severe impairments: major depressive disorder, alcohol dependence, cocaine dependence and asbestosis. The ALJ also determined that the claimant suffered from the following non-severe impairments: headaches, hypertension, post-traumatic stress disorder, and borderline intellectual functioning. The ALJ, however, found that these impairments, singly or in combination, did not manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 26-28).

The ALJ determined that the claimant had the RFC to perform light work with certain exceptions. Specifically, the claimant should avoid pulmonary irritants, hazardous machinery,

9

unprotected heights, sudden or frequent changes and interaction with the public; could perform only simple and repetitive tasks; could maintain concentration for two hours with routine breaks; and should have only occasional supervision. In evaluating the claimant's impairments and her subjective symptoms and limitations, the ALJ concluded that while he did suffer from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. However, the ALJ determined that the claimant's testimony as to his alleged symptoms was not credible. (R. 30-32).

To support this determination, the ALJ noted that the claimant attributed all his physical problems to his asbestosis and no evidence documented any musculoskeletal problems. He determined that the objective medical evidence did not support the claimant's alleged physical symptoms. The ALJ cited the claimant's statements to Dr. Hain that his medication improved his symptoms. He stated that the claimant's hospitalizations appeared to all come after a period where the claimant was off his medication, drinking alcohol and smoking crack-cocaine. He also noted that, despite the claimant's allegations at the hearing, he reported no significant side effects to Dr. Hain. The ALJ also stated that the claimant, throughout the record, was not always "forthcoming with respect to his alcohol and cocaine use." Further, the ALJ referenced the claimant's assertion to Dr. Blotcky that he had no arrests, despite spending seven months in prison. (R. 31-32).

The ALJ stated that, in making these determinations, he gave significant weight to the clinical findings of treating psychiatrist Dr. Hain. He noted that her findings were also consistent with the record as a whole. Next, the ALJ found Dr. Estock's review was entitled to "some" weight, "to the extent [it was] consistent with the" RFC assessment. The ALJ, however, determined that Dr. Blotcky's assessment was entitled to little to no weight. He noted that the

assessment was based largely on the claimant's statements and that Dr. Blotcky did not have access to the claimant's treatment records. He also stated it was inconsistent with Dr. Hain's records. Further, he found that "the context" of the assessment, sought by the claimant for evidence rather than treatment, further detracted from its evidentiary value. (R. 32-33).

Based on this RFC finding and Ms. Peacock's testimony, the ALJ determined the claimant could not perform any past relevant work but could perform jobs that exist in significant numbers in the national economy. Thus, he concluded that the claimant was not disabled under the Social Security Act. (R. 33-35).

## VI. DISCUSSION

After careful review, the court concludes that the ALJ applied the correct legal standards, and his decision is supported by substantial evidence. The court addresses the claimant's arguments below.

*Consideration of the Claimant's Impairments and Limitations*

The claimant argues that the ALJ erred by not specifically considering all of the claimant's impairments and by not performing a function-by-function analysis in his RFC findings. This argument is unpersuasive.

Where a claimant alleges multiple impairments, the Commissioner must consider the combined effects of all impairments in determining disability, not merely the individual effects of the several impairments. *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990); *Walker*, 826 F.2d at 1001; 20 C.F.R. § 404.1523; 20 C.F.R. § 416.923. To determine the effects of the impairments, the ALJ must first note the functional limitations caused by these impairments and analyze the claimant's "work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." Social Security

Ruling 96-8p, 61 Fed. Reg. 34474-01 (July 2, 1996). After this initial analysis, the ALJ may express the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id*.

In his decision, the ALJ specifically considered the functional limitations of the claimant's non-severe impairments – headaches, hypertension, post-traumatic stress disorder and border-line intellectual functioning. The ALJ did not perform a function-by-function analysis on these impairments, because he determined that they *did not cause* any functional limitations. First, the ALJ found that the claimant's alleged frequency and severity of his headaches had no support in the objective medical evidence on record. The ALJ noted that the claimant had worked the past fifteen to twenty years, despite the alleged presence of these recurrent headaches. The ALJ also cited successful treatment with Neurontin and a normal MRI. Based on this, the ALJ concluded that the headaches did not cause "any sustained limitation of function, either alone or in combination with the claimant's other impairments." (R. 27). Next, the ALJ considered the claimant's hypertension and, again, concluded that the objective medical evidence did not support a finding that the impairment caused any functional limitations, alone or in combination.

The ALJ then found that the claimant's post-traumatic stress disorder had no supporting evidence in the record. He noted that the claimant did not report the alleged abuse until 2009 after multiple trips to the hospital and that treating physician Dr. Hain "ruled out" post-traumatic stress disorder on February 12, 2010. (R. 27, 279). Further, he cited that the claimant lived with the alleged abuser as an adult, suggesting minimal, if any, limitations. Based on these findings, the ALJ concluded that the claimant's post-traumatic stress disorder did not cause any sustained limitation of function, alone or in combination with the other impairments. (R. 27). Finally, the

ALJ considered the claimant's borderline intellectual functioning. The ALJ noted that he gave Dr. Blotcky's assessment, the only evidence of that condition, little weight. He also stated that the WAIS-IV score – used by Dr. Blotcky to diagnose the claimant – was inconsistent with the claimant's educational history, specialized training and work history. Thus, he found that it did not cause any sustained limitations on the claimant's ability to function. (R. 28).

The ALJ considered the claimant's non-severe impairments and determined that they did not cause any functional limitations. Consequently, a function-by-function analysis of the limitations caused by the claimant's non-severe impairments was not required, nor possible.

The ALJ also considered the effects of the claimant's asbestosis and determined that the condition did not cause any significant limitations. He cited Dr. Schonfeld's, the diagnosing physician, statements that the claimant should have yearly x-rays, pulmonary functioning screening and gastrointestinal screening and should refrain from smoking. The ALJ then noted that the claimant continued to smoke and sought no follow-up treatment. (R. 28). The ALJ then determined that the asbestosis and the medical record – particularly the absence of any musculoskeletal problems – did not support the claimant's alleged functional limitations. (R. 31-32). In fact, the ALJ only considered asbestosis a severe impairment by giving the claimant "the benefit of any reasonable doubt." (R. 28).

In his RFC determination, the ALJ stated:

> Nonetheless, I have fully accounted for the claimant's alleged physical limitations by limiting him to light work; requiring him to avoid concentrated exposure to pulmonary irritants; and precluding him from working with hazardous machinery and at unprotected heights.

(R. 32). If the ALJ erred by neglecting to specifically discuss alleged functional limitations he found unsupported by the medical record yet still accounted for in his RFC determination, it did not prejudice the claimant and, thus, does not require a remand. *See Hudson v. Astrue*, 2:11-CV-

02851-RDP, 2012 WL 4479082 (N.D. Ala. Sept. 24, 2012) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)) ("[A] remand is only appropriate if the lack of the function-by-function analysis resulted in an unfair evidentiary gap or clear prejudice to [the claimant].").

Finally, the ALJ considered the functional limitations of the claimant's mental condition. The ALJ extensively discussed the claimant's medical condition in his decision, including Dr. Estock's Psychiatric Review, the claimant's statements, treating physician Dr. Hain's medical records and the claimant's polysubstance abuse. (R. 29-32). The ALJ determined that the claimant suffered several functional limitations because of his mental condition. Specifically, the ALJ stated the mental impairment caused mild restrictions in activities of daily living; moderate difficulties in social functioning; and moderate difficulties with concentration, persistence and pace – with one to two episodes of decompensation. (R. 29). Thus, the ALJ provided a sufficient function-by-function analysis of the limitations caused by the claimant's mental impairment.

*Physician's Opinions*

The claimant next argues that the ALJ committed reversible error by rejecting the opinion of examining physician Dr. Blotcky and by giving some weight to the opinion of non-examining physician Dr. Estock. This argument lacks merit.

The opinion of an examining physician is normally entitled to more weight than a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir. 1985). However, examining physicians are not entitled to the same deferential status as treating physicians. *McSwain v. Bowen*, 814 F.2d 617 (11th Cir.1987); 20 C.F.R. 404.1527(c)(2). The opinion of any physician may be discredited if the ALJ provides good cause. *Lamb v. Brown*, 847 F.2d 698, 703 (11th Cir. 1998). Good cause for rejecting a *treating* physician's opinion exists when

"the :(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440). If these reasons support rejecting a treating physician's opinion, which is entitled to great deference, they also can support discrediting an examining physician's opinion.

Substantial evidence supports the ALJ's decision to give Dr. Blotcky's opinion little to no weight. The ALJ first noted that Dr. Blotcky is not a treating physician but an examining physician who performed a "one-time assessment." (R. 33). Furthermore, the ALJ stated that Dr. Blotcky relied almost exclusively on subjective information provided by the claimant. The ALJ had good cause to discredit a medical opinion based solely on the claimant's allegations and not objectively supported by the medical record. *See Ogranaja v. Comm'r of Soc. Sec.*, 186 Fed. App'x 848, 850 (11th Cir. 2006) (A "mental evaluation that is based on subjective complaints and not on significant clinical findings is not sufficient to establish that the claimant has a mental problem that results in significant limitations."). The ALJ also determined that Dr. Blotcky's opinions were inconsistent with the findings of Dr. Hain, a treating physician. The lack of evidentiary support and the contrary evidence in the record provided good cause to discredit Dr. Blotcky's opinion. Substantial evidence supports the ALJ credibility determination.[1]

The ALJ did not err when he gave "some weight" to the opinion of reviewing physician Dr. Estock. The claimant contends that subsequent evidence "superseded" Dr. Estock's opinion and, as a non-examining physician, his opinion is only entitled to little weight. All the medical

---

[1] The ALJ also referenced that the claimant had "presumably paid for the report." (R. 33). Courts have held that this fact, in and of itself, is not substantial evidence to discredit a physician's opinions. *See Hinton v. Massanari*, 13 Fed. App'x 819, 824 (10th Cir. 2001). However, even if this statement was an error, substantial evidence still supports the ALJ's determination. *See Mason ex rel. Mason v. Astrue*, No. 10-621-M, 2011 WL 2670005 (S.D. Ala. July 6, 2011) ("[T]he [c]ourt agrees … that it was inappropriate for the ALJ to have remarked that [the physician's] opinion was purchased …, [but] it is not reversible error in light of the other evidence of record.").

evidence subsequent to Dr. Estock's review is consistent with the prior medical evidence. After Dr. Estock's review, the claimant suffered a relapse and was admitted to UAB hospital with suicidal ideation. (R. 331-33). However, the claimant also had relapses in November 2005 (R. 266-68), July 2007 (R. 239-41), and November 2009 (R. 246-49). These records, which also show major depressive disorder, substance abuse and suicidal ideation, were available to Dr. Estock. Further, Dr. Hain's subsequent treatment provides no evidence that conflicts with Dr. Estock's assessment. Dr. Estock's opinion is not negated merely because he did not provide the most recent medical assessment. Substantial evidence, including the subsequent evidence, supports the ALJ's decision to give some weight to Dr. Estock's opinion.

Next, the ALJ did not err by giving some weight to Dr. Estock's assessment because he was a non-examining physician. The claimant correctly notes that non-examining physicians are given less weight than examining physicians. *See Broughton*, 776 F.2d at 961–62. But this general rule does not preclude the ALJ from relying on a non-examining physician's assessment when it did not conflict with an examining physician's report. *See Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. App'x 869, 873 (11th Cir. 2011). Dr. Hain's reports are consistent with Dr. Estock's reports. Furthermore, the medical record as a whole is consistent with Dr. Estock's reports. The ALJ properly discredited the only evidence, Dr. Blotcky's assessment and the claimant's testimony, contradicting Dr. Estock's reports. Thus, the ALJ did not err by giving some weight to Dr. Estock's opinion.

*Duty to Develop the Record*

The claimant contends that the ALJ did not fulfill his duty to develop the record by ordering a consultative examination or obtaining an opinion from a medical expert. The court disagrees.

As the claimant notes, the ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Nevertheless, the burden remains with the claimant to prove that he is disabled and to produce medical evidence supporting his claim. 20 C.F.R. § 416.912(c); *Ellison*, 355 F.3d at 1276. The ALJ's duty to develop the record encompasses an obligation to order a consultative evaluation when one is needed to make an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (citing *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)). A consultative examination is only required when "necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources." *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citing 20 C.F.R. § 404.1519a).

The record contained sufficient information for the ALJ to make an informed decision. Dr. Hain's records indicate that the claimant's medications controlled his symptoms. (R. 311, 395, 392). Dr. Estock stated the claimant's condition was treatable with medication. (R. 282). Both advised against continued alcohol and cocaine abuse. (R. 282, 396). Furthermore, all four of the claimant's admissions to UAB hospital appear to have occurred after cocaine or alcohol abuse. (R. 272, 240, 248, 332). Thus, the record contained substantial evidence for the ALJ's determination that "[w]ithout polysubstance abuse, and with medication, the claimant's depressive symptoms … are not as limiting as alleged." (R. 32). Because substantial evidence supports this determination, the ALJ was not required to order a consultative examination.

The ALJ also did not err by failing to ask for a medical expert opinion to support his RFC findings. Determining the claimant's RFC is not a medical assessment. *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011). Therefore, the ALJ is not required to rely on an expert

medical opinion in making the RFC assessment. *Id*. Substantial evidence in the record supports the ALJ's determination.

*Other Work*

The claimant argues that he cannot perform the job of machine die tender because of his environmental restrictions. First, even if the court accepted this argument, the vocational expert also testified that claimant could perform the job of integrated circuit assembler and electrical pre-assembler. Further, the Dictionary of Occupational Titles entry for die machine tender states that for exposure to weather, cold, heat, wetness or humidity, the "[a]ctivity or condition does not exist." DOT Listing 726.685-026 *available at* DICOT § 726.685-026. It also states that for other atmospheric conditions and "other" environmental conditions the "[a]ctivity or condition does not exist." *Id*. The vocational expert's testimony about jobs the claimant could perform, including die machine tender, provide substantial evidence to support the Commissioner's decision that the claimant could perform jobs that existed in significant numbers in the national economy.

## VII. CONCLUSION

For the reasons stated above, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 30th day of October, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE